JUDGE CHIN

10 CV 1597

Richard M. Cieri (RC6062)
M. Natasha Labovitz (ML5153)
Craig A. Bruens (CB2349)
Stephen E. Hessler, Esq. (SH4507)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
stephen.hessler@kirkland.com

Jeffrey M. Lenser
Lara A. Degenhart
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, D.C.
Telephone: (202) 783-0800
Facsimile: (202-383-6610

Counsel for Chemtura Canada Co./CIE



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AIU INSURANCE COMPANY; AMERICAN AMERICAN HOME ASSURANCE COMPANY; CHARTIS SPECIALTY INSURANCE COMPANY) (FORMERLY KNOWN AS AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY); GRANITE STATE INSURANCE COMPANY; ILLINOIS NATIONAL INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Plaintiffs,<br><br>        v.<br><br>CHEMTURA CANADA CO./CIE and ZURICH INSURANCE COMPANY,<br><br>        Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL** |

Chemtura Canada Co./CIE ("Chemtura Canada") files this Notice of Removal of the Civil Action (defined below) ("Notice of Removal") filed by AIU Insurance Company and several affiliates[1] (collectively "AIG"), pursuant to 28 U.S.C. § 1452(a), and Rule 9027 of the Federal Rules of Bankruptcy Procedure, and in support thereof states as follows:

1.      On or about February 4, 2010, AIG commenced a civil action (the "Civil Action") against Chemtura Canada, an indirect subsidiary of Chemtura Corporation ("Chemtura"), and Zurich Insurance Company ("Zurich"), in the Supreme Court of the State of New York, County of New York (Index No. 600307/10).

2.      The Civil Action seeks a declaratory judgment as to the insurance coverage that AIG owes to Chemtura Canada for claims alleging injury from exposure to diacetyl.  Chemtura Canada is covered under insurance policies of Chemtura, including the insurance policies that are the subject of the Civil Action.  As such, the Civil Action is directly targeted at Chemtura and its insurance policies.  In fact, AIG intends that the Civil Action will "determine" Chemtura's "rights" and "obligations" under the insurance policies at issue. *See Motion for an Order Granting Relief From The Automatic Stay* [Dkt. No. 1908] that AIG filed in *In re Chemtura Corporation*, Case No. 09-11233(REG) (Jointly administered), at ¶ 16.

3.      On March 18, 2009, Chemtura filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.  Chemtura's chapter 11 case is being jointly administered with chapter 11 cases of its affiliates under the caption *In re Chemtura*

---

[1]    American Home Assurance Company; Chartis Specialty Insurance Company (formerly known as American International Specialty Lines Insurance Company); Granite State Insurance Company; Illinois National Insurance Company; Lexington Insurance Company; and National Union Fire Insurance Company of Pittsburgh, Pa.

*Corporation*, Case No. 09-11233(REG) (Jointly administered). Thus, the automatic stay provisions of section 362 of the Bankruptcy Code preclude AIG from including Chemtura in the Civil Action.[2]

4.      Chemtura's insurance policies are property of Chemtura's bankruptcy estate, important assets in its chapter 11 case, and an integral part of developing a plan of reorganization. *See In re U.S. Lines, Inc.*, 197 F.3d 631, 638-39 (2d. Cir. 1999) (quoting *Dicola v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re Prudential Lines Inc.)*, 170 B.R. 222, 229 (S.D.N.Y. 1994) ("indemnity insurance contracts, particularly where the debtor is faced with substantial liability claims within the coverage of the policy, 'may well be … the most important asset of [*i.e.*, the debtor's] estate.'"); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) ("A products liability policy of the debtors…is a valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims"); *In re Probulk, Inc.*, 407 B.R. 56, 61 (Bankr. S.D.N.Y. 2009) ("The fact that the debtors' world-wide insurancerights became property of the estate makes applicable § 362(a)(3) of the Bankruptcy Code…."). Any decisions about the coverage available to Chemtura Canada will have an impact on Chemtura's estate. Indeed, AIG instituted the Civil Action only after Chemtura provided notice to AIG of more than 300 proofs of claim that had been filed against Chemtura in its chapter 11 case alleging injuries from exposure to diacetyl.

5.      Pursuant to this Notice of Removal, Chemtura Canada is removing all claims asserted in the Civil Action (the "Removed Claims"). The Removed Claims

---

[2]    Further, notwithstanding that the Civil Action was commenced against Chemtura Canada, a non-debtor, Chemtura believes that the commencement of the Civil Action violated section 362 of the Bankruptcy Code because AIG seeks to interfere with property of Chemtura's chapter 11 estate and thus the Civil Action is void *ab initio*. *See Debtors' Objection to Motion for an Order Granting Relief From the Automatic Stay and Cross Motion for Enforcement of the Automatic Stay* [Dkt. No. 2063] that Chemtura filed in *In re Chemtura Corporation*, Case No. 09-11233(REG) (Jointly administered),. The Bankruptcy Court will determine whether or not AIG's commencement of the Civil Action violated the automatic stay. This Notice of Removal is being filed as a protective matter pending such determination by the Bankruptcy Court with all rights of Chemtura and Chemtura Canada reserved.

include any cross-claims or other claims asserted against Chemtura, Chemtura Canada, and Zurich.

6.      The Removed Claims may be removed to this Court pursuant to 28 U.S.C. § 1452(a) because this Court has jurisdiction over the Removed Claims pursuant to 28 U.S.C. § 1334.

7.      Under 28 U.S.C. § 1334(e)(1), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate."

8.      This Court has exclusive jurisdiction over the Civil Action against Chemtura Canada because Chemtura Canada is covered under Chemtura's insurance policies, and a debtor's insurance policies are assets of its bankruptcy estate. *Supra* at ¶4.

9.      Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The test for determining whether litigation falls within "related to" jurisdiction is whether the action has "any conceivable effect" on the bankruptcy estate. *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d. Cir. 1992).

10.     This Court also has "related to" jurisdiction over the Civil Action against Chemtura Canada and Zurich because it is directly targeted at Chemtura and its insurance policies. It seeks to determine Chemtura's right to insurance coverage for the diacetyl claims; that insurance coverage is a significant asset of its bankruptcy estate and an integral part of developing a plan of reorganization.

11.     This Notice of Removal is timely filed because it is within 30 days after AIG served the Civil Action on Chemtura Canada. Upon removal, the Civil Action will be a core proceeding under 28 U.S.C. § 157(b).

12.     The United States District Court for the Southern District of New York is located within the state and county where the Civil Action is pending.  Pursuant to Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York of Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.), the Civil Action should be automatically referred to the Bankruptcy Court (the Honorable Robert E. Gerber) to be administered in connection with the Chapter 11 Cases.

13.     Chemtura Canada has given written notice of this Notice of Removal to all adverse parties in the Civil Action and has filed a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York.

WHEREFORE, Chemtura Canada hereby removes all claims against Chemtura Canada from the Supreme Court of the State of New York, County of New York.

Dated:  February 25, 2010

By: _____

Richard M. Cieri (RC6062)
M. Natasha Labovitz (ML5153)
Craig A. Bruens (CB2349)
Stephen E. Hessler, Esq. (SH4507)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Of counsel

Jeffrey M. Lenser
Lara A. Degenhart
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, D.C.
Telephone:  (202) 783-0800
Facsimile:  (202) 383-6610

Counsel for Chemtura Canada Co./CIE

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------x

AIU INSURANCE COMPANY, AMERICAN )
HOME ASSURANCE COMPANY, CHARTIS )
SPECIALTY INSURANCE COMPANY )
(FORMERLY KNOWN AS AMERICAN )
INTERNATIONAL SPECIALTY LINES )
INSURANCE COMPANY), GRANITE STATE )
INSURANCE COMPANY, ILLINOIS NATIONAL )
INSURANCE COMPANY, INSURANCE )
COMPANY OF THE STATE OF )
PENNSYLVANIA, LEXINGTON INSURANCE )
COMPANY, AND NATIONAL UNION FIRE )
INSURANCE COMPANY OF PITTSBURGH, PA, )
)
Plaintiffs,                       )
)
v.                          )
)
CHEMTURA CANADA CO./CIE, AND        )
ZURICH INSURANCE COMPANY,           )
)
Defendants.                       )

---------------------------------------------------x

Index No. 600307/10

NEW YORK
COUNTY CLERK'S OFFICE

FEB - 4 2010

NOT COMPARED
WITH COPY FILED

## COMPLAINT

Plaintiffs, AIU Insurance Company ("AIU"), American Home Assurance

Company ("American Home"), Chartis Specialty Insurance Company (formerly known as

American International Specialty Lines Insurance Company), ("CSIC"), Granite State Insurance

Company ("Granite State"), Illinois National Insurance Company ("Illinois National"), The

Insurance Company of the State of Pennsylvania ("ISOP"), Lexington Insurance Company

("Lexington"), and National Union Fire Insurance Company of Pittsburgh, PA ("National

Union") (collectively, the "Umbrella and Excess Carriers") by and through their attorneys,

Simpson Thacher & Bartlett LLP, for their Complaint against Chemtura Canada Co/CIE

("Chemtura Canada") and Zurich Insurance Company ("Zurich"), allege as follows:

## NATURE OF ACTION

1.     Defendant Chemtura Canada allegedly manufactured and sold the butter flavoring chemical diacetyl that was used in microwave popcorn and other foods. This is an insurance coverage dispute related to hundreds of claims asserted by individuals claiming personal injury from exposure to diacetyl (the "Diacetyl Claims"). The Umbrella and Excess Carriers are alleged by Chemtura Canada to have issued policies that provide coverage to Chemtura Canada for Diacetyl Claims. The Umbrella and Excess Carriers are informed and believe that Chemtura Canada procured primary insurance from Zurich and other insurers and also had a self-insurance program. Nonetheless, Chemtura Canada has improperly sought to have umbrella and excess insurance policies allegedly issued by plaintiffs act as primary insurance coverage for the Diacetyl Claims. The Umbrella and Excess Carriers seek a declaration, among other things, of the parties' rights and obligations with respect to insurance policies allegedly issued by the Umbrella and Excess Carriers and other insurance policies that may provide coverage to Chemtura Canada for Diacetyl Claims.

2.     Chemtura Canada has misrepresented and refused to disclose potentially available primary and other insurance. It also has misrepresented and refused to provide information regarding the exhaustion of primary and self-insured retentions ("SIRs") and the nature of its potential liability for Diacetyl Claims. Chemtura Canada's misrepresentations and failures to disclose information were intended to induce the Umbrella and Excess Carriers into providing insurance coverage that they do not owe as Chemtura Canada has not exhausted its primary insurance coverage and/or self-insured retentions. The Umbrella and Excess Carriers are entitled to a declaration and judgment regarding the Umbrella and Excess Carriers rights and duties under the policies allegedly issued by them that (i) the Umbrella and Excess Carriers have no

2

duty to defend or indemnify Chemtura Canada against Diacetyl Claims, (ii) Zurich, other

insurers and Chemtura Canada are required to defend and/or indemnify Chemtura Canada

against the Diacetyl Claims for their applicable share of any costs, and (iii) Zurich, other insurers

and Chemtura Canada must contribute to or otherwise indemnify the Umbrella and Excess

Carriers for payments made to Chemtura Canada for the defense of the Diacetyl Claims to date.

## **PARTIES**

3.    AIU is a corporation organized under the laws of the State of New York with its

principal place of business in New York, New York.  Chemtura Canada claims that AIU issued

insurance policies that cover it for Diacetyl Claims.  AIU is informed and believes that the

policies are voluminous and that Chemtura Canada has copies of such policies.

4.    American Home is a corporation organized under the laws of the State of New

York with its principal place of business in New York, New York.  Chemtura Canada claims that

American Home issued insurance policies that cover it for Diacetyl Claims.  American Home is

informed and believes that the policies are voluminous and that Chemtura Canada has copies of

such policies.

5.    CSIC is a corporation organized under the laws of the State of Illinois with its

principal place of business in New York, New York.  Chemtura Canada claims that CSIC issued

insurance policies that cover it for Diacetyl Claims.  CSIC is informed and believes that the

policies are voluminous and that Chemtura Canada has copies of such policies.

6.    Granite State is a corporation organized under the laws of the State of

Pennsylvania with its principal place of business in New York, New York.  Chemtura Canada

claims that Granite State issued insurance policies that cover it for Diacetyl Claims.  Granite

State is informed and believes that the policies are voluminous and that Chemtura Canada has

3

copies of such policies.

7.     Illinois National is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois. Chemtura Canada claims that Illinois National issued insurance policies that cover it for Diacetyl Claims. Illinois Nation is informed and believes that the policies are voluminous and that Chemtura Canada has copies of such policies.

8.     ISOP is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in New York, New York. Chemtura Canada claims that ISOP issued insurance policies that cover it for Diacetyl Claims. ISOP is informed and believes that the policies are voluminous and that Chemtura Canada has copies of such policies.

9.     Lexington is a corporation organized under the laws of the State of Delaware with its principal place of business in Massachusetts. Chemtura Canada claims that Lexington issued insurance policies that cover it for Diacetyl Claims. Lexington is informed and believes that the policies are voluminous and that Chemtura Canada has copies of such policies.

10.    National Union is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in New York, New York. Chemtura Canada claims that National Union issued insurance policies that cover it for Diacetyl Claims. National Union is informed and believes that the policies are voluminous and that Chemtura Canada has copies of such policies.

11.    Upon information and belief, Chemtura Canada is a corporation with its principal place of business in Ontario, Canada. Chemtura Canada claims the right to insurance coverage for the Diacetyl Claims under policies that were allegedly issued by insurers in the State of New York.

12.    Upon information and belief, Zurich is a corporation with its principal place of

4

business in Ontario, Canada. Zurich is in the business of insuring risks, including risks in the State of New York.

## BACKGROUND

**Claims Related to Chemtura's Manufacturing and Sale of Diacetyl**

13.     Chemtura Canada allegedly manufactured diacetyl at its Elmira, Ontario facility from 1982 to 2005. Diacetyl is a butter flavoring ingredient that was used in the food industry prior to 2006. It was a common ingredient in microwave popcorn. The purported parent of Chemtura Canada, Chemtura Corp. ("Chemtura US"),[1] allegedly purchased diacetyl from Chemtura Canada and sold it in the United States.

14.     Beginning in 2004, food industry workers began alleging that exposure to diacetyl caused respiratory illness. Since then lawsuits have been filed by such workers seeking damages for injuries allegedly caused by exposure to diacetyl. At least one lawsuit has also been filed by a consumer of microwave popcorn alleging injury caused by exposure to diacetyl.

15.     More than twenty lawsuits and hundreds of claims have been asserted against Chemtura Canada and/or Chemtura US seeking to hold them liable for personal injuries based on their alleged manufacturing, distribution, and/or sale of diacetyl. Two of the claims have purportedly been settled, although the vast majority of the claims remain pending.

16.     The Diacetyl Claims pending against Chemtura Canada and/or Chemtura US can be divided into two general categories. The first includes claims against Chemtura Canada

---

[1]     On or about March 18, 2009, Chemtura US filed a voluntary petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. Chemtura Canada did not file a bankruptcy petition. The Umbrella and Excess Carriers are not at this time seeking any relief from Chemtura US, or any relief that would violate the automatic stay in the action styled *In re: Chemtura Corp., et al.*, Case No. 09-11233 (Bankr. S.D.N.Y.), but intend to promptly seek relief from the automatic bankruptcy stay in order to add Chemtura US as a defendant in this action.

and/or Chemtura US by the individuals purportedly injured as a result of exposure to diacetyl. These claims generally are for, *inter alia*, strict liability, design defect, failure to warn, negligence and loss of consortium. The second category includes claims against Chemtura Canada and/or Chemtura US brought by food industry companies. These claims are generally for indemnification or contribution related to suits against such food industry companies for alleged diacetyl-related injuries.

17. The diacetyl claimants typically allege that they were exposed to diacetyl over a period of years while they worked for food industry companies.

**Chemtura's Insurance Demands**

18. Chemtura Canada and Chemtura US have sought or will seek coverage from the Umbrella and Excess Carriers for the Diacetyl Claims. Chemtura Canada and Chemtura US have separately sought coverage under (i) "occurrence-based" excess insurance policies allegedly issued by certain Umbrella and Excess Carriers between 1967 and 1986 (the "1967-1986 Policies"), (ii) "occurrence-based" umbrella and excess insurance policies allegedly issued by certain Umbrella and Excess Carriers to Chemtura Canada and Chemtura US's purported corporate predecessors from November 4, 1996 to November 4, 2001 (the "1996-2001 Policies"), and (iii) "claims-made" excess insurance policies allegedly issued by certain Umbrella and Excess Carriers to Chemtura Canada and Chemtura US's purported corporate predecessors from November 4, 2004 to November 4, 2005 (the "2004-2005 Policies").[2] Chemtura Canada and/or Chemtura US have also claimed coverage under certain other policies allegedly issued by the Umbrella and Excess Carriers that are not the subject of this complaint as the terms of the policies appear to require arbitration.

---

[2] The policies identified in the complaint have not been attached because they are voluminous.

**1967-1986 Policies**

19.     Chemtura Canada and/or Chemtura US have claimed coverage for Diacetyl Claims under more than 60 policies allegedly issued prior to 1986 by AIU, American Home, Illinois National, ISOP, Granite State, Lexington, and National Union.  At least 40 of these policies were allegedly issued prior to the time when Chemtura Canada allegedly started manufacturing diacetyl.  Copies of all of these policies have not been located.  Chemtura Canada and/or Chemtura US have only provided copies of a portion of them.

20.     The policies that have been provided are excess "occurrence-based" policies issued to entities other than Chemtura Canada or Chemtura US.  Chemtura Canada and/or Chemtura US have not provided information sufficient to establish that Chemtura Canada and Chemtura US are insured under the 1967-1986 Policies allegedly issued by the Umbrella and Excess Carriers for the Diacetyl Claims.

21.     Since all the located policies are excess policies, they require exhaustion of the underlying limits prior to being triggered.  The Umbrella and Excess Carriers believe the underlying coverage and SIRs have not been exhausted.  Chemtura Canada and/or Chemtura US have not provided any information to establish exhaustion of the underlying insurance.  Chemtura Canada and/or Chemtura US have also declined to provide copies of the underlying insurance (or evidence of a self insurance program).

**1996-2001 Policies**

22.     Chemtura Canada and/or Chemtura US have claimed coverage for Diacetyl Claims under at least seven policies allegedly issued from November 4, 1996 to November 4, 2001 by National Union and Lexington.  Complete copies of all of these policies have not been located.  Chemtura Canada and/or Chemtura US have only provided copies of a portion of them.

7

23.     The policies that have been located are "occurrence-based" umbrella or excess policies issued to entities other than Chemtura Canada or Chemtura US. Chemtura Canada and/or Chemtura US have not provided information sufficient to establish that Chemtura Canada and Chemtura US are insured under the 1996-2001 Policies for the Diacetyl Claims.

24.     Since the located policies are umbrella or excess policies, they all require exhaustion of the underlying limits prior to being triggered. The Umbrella and Excess Carriers believe that Zurich and other insurers provided underlying and other insurance that may provide coverage for the Diacetyl Claims. On January 28, 2010, counsel for Chemtura Canada and Chemtura US provided information confirming that, contrary to Chemtura Canada and Chemtura US's prior representations, Zurich provided primary coverage that is not exhausted. Chemtura Canada and Chemtura US have still declined to disclose to the Umbrella and Excess Carriers the full details of underlying coverage and the exhaustion of such coverage and/or SIRs.

25.     Chemtura Canada and/or Chemtura US have nevertheless maintained their position that the National Union policy for the 1999-2000 period ought to pay the costs of defending against the Diacetyl Claims even though underlying insurance and self-insurance has not been exhausted and other insurance is available to contribute to the defense.

26.     To the extent a Diacetyl Claim alleges injuries from diacetyl exposure over multiple policy periods, Chemtura Canada and Chemtura US's defense costs for such claim should be allocated among applicable primary insurance, including self-insurance. Accordingly, Chemtura Canada, Zurich, and potentially others, ought to be contributing to the costs of defending Chemtura Canada and/or Chemtura US from the Diacetyl Claims.

27.     To the extent a Diacetyl Claim alleges injuries from diacetyl exposure over multiple policy periods, any indemnification for such claim should be allocated to applicable

8

periods of insurance, including self-insurance.

28.     To date, in order to protect the interests of their purported insureds, National

Union has contributed millions of dollars towards the defense of the Diacetyl Claims under a full

reservation of rights.

**2004-2005 Policies**

29.     Chemtura Canada and/or Chemtura US have claimed coverage for Diacetyl

Claims under at least two policies allegedly issued from November 4, 2004 to November 4, 2005

by CSIC. The Umbrella and Excess Carriers have been unable to locate a copy of at least one of

these policies and Chemtura Canada and/or Chemtura US have declined to provide copies of it.

For the policy that has been located, it is an excess policy issued to Chemtura US.

30.     The located policy is a "claims-made" excess policy.  As such, it requires

exhaustion of the underlying limits prior to being triggered. The Umbrella and Excess Carriers

believe the underlying coverage has not been exhausted. Chemtura Canada and/or Chemtura US

have declined to provide any information regarding exhaustion of the underlying limits.

Chemtura Canada and/or Chemtura US have also declined to provide copies of any underlying

insurance.

<u>**FIRST CAUSE OF ACTION**</u>
**(Declaration of No Coverage)**

31.     The Umbrella and Excess Carriers incorporate by reference the allegations of

Paragraphs 1-30 as though fully set forth herein.

32.     The Umbrella and Excess Carriers seek a declaration that under the terms,

conditions, and exclusions contained in the policies allegedly issued by them, the Umbrella and

Excess Carriers have no obligation, either in whole or in part, to defend or indemnify Chemtura

Canada against the Diacetyl Claims.

9

## SECOND CAUSE OF ACTION
### (Declaration Regarding Allocation)

33.     The Umbrella and Excess Carriers incorporate by reference the allegations of Paragraphs 1-32 as though fully set forth herein.

34.     The Umbrella and Excess Carriers seek a declaration that Chemtura Canada's covered defense costs (if any) and covered settlements or judgments (if any) for the Diacetyl Claims be allocated to all applicable policies and periods of self-insurance, whether or not such policy was issued by an Umbrella or Excess Carrier or some other insurer and whether or not such period was insured or self-insured.[3]

## THIRD CAUSE OF ACTION
### (Declaration of No Duty to "Drop Down")

35.     The Umbrella and Excess Carriers incorporate by reference the allegations of Paragraphs 1-34 as though fully set forth herein.

36.     The Umbrella and Excess Carriers seek a declaration that its insureds are not relieved of their obligations under any policy, including but not limited to obligations to exhaust underlying insurance, deductibles, or retentions before any obligation under such policy is triggered, and that there is no requirement that the Umbrella and Excess Carriers "drop down" to defend or indemnify for the Diacetyl Claims before the retained limits and/or the limits of the underlying insurance have been exhausted.

## FOURTH CAUSE OF ACTION
### (Declaration Regarding Zurich's Obligations)

37.     The Umbrella and Excess Carriers incorporate by reference the allegations of Paragraphs 1-36 as though fully set forth herein.

---

[3]     The Plaintiffs do not at this time seek to allocate defense costs to any particular policy where the allocation of such defense costs would erode the limits of coverage available to Chemtura US.

38.     The Umbrella and Excess Carriers seek a declaration that under the terms, conditions, and exclusions of any policies of insurance issued by Zurich, Zurich is obligated to contribute to the defense and/or indemnification of Chemtura Canada against the Diacetyl Claims up to the limits of, and subject to the terms and conditions of, its policies.

## FIFTH CAUSE OF ACTION
### (Contribution, Indemnification and/or Subrogation – Zurich)

39.     National Union incorporates by reference the allegations of Paragraphs 1-38 as though fully set forth herein.

40.     The Diacetyl Claims include allegations of personal injury that fall within the coverage of the policy or policies issued by Zurich.  To date, Zurich has failed to pay any amounts incurred in connection with the Diacetyl Claims.

41.     Zurich must contribute to defense costs incurred with respect to the Diacetyl Claims.

## SIXTH CAUSE OF ACTION
### (Recoupment – Chemtura Canada)

42.     National Union incorporates by reference the allegations of Paragraphs 1-41 as though fully set forth herein.

43.     National Union seeks recoupment from Chemtura Canada of uncovered defense costs paid under a reservation of rights, including costs paid based upon misrepresentations by Chemtura Canada and/or Chemtura US.

## PRAYER FOR RELIEF

WHEREFORE, the Umbrella and Excess Carriers respectfully pray for judgment as follows:

(a)     On their First Cause of Action, a determination and declaration that the Umbrella

11

and Excess Carriers have no obligation, either in whole or in part, to defend or indemnify

Chemtura Canada against the Diacetyl Claims; and

      (b)    On their Second Cause of Action, a determination and declaration that Chemtura

Canada's covered defense costs (if any) and covered settlements or judgments (if any) for the

Diacetyl Claims be allocated to all applicable policies and periods of self-insurance, whether or

not such policy was issued by an Umbrella or Excess Carrier or some other insurer and whether

or not such period was insured or self-insured; and

      (c)    On their Third Cause of Action, a determination and declaration that its insureds

are not relieved of their obligations under any policy, including but not limited to obligations to

exhaust underlying insurance, deductibles, or retentions before any obligation under such policy

is triggered, and that there is no requirement that the Umbrella and Excess Carriers "drop down"

to defend or indemnify for the Diacetyl Claims before the retained limits and/or the limits of the

underlying insurance have been exhausted; and

      (d)    On their Fourth Cause of Action, a determination and declaration that under the

terms, conditions, and exclusions of any policies of insurance issued by Zurich, Zurich is

obligated to contribute to the defense and/or indemnification of Chemtura Canada against the

Diacetyl Claims up to the limits of, and subject to the terms and conditions of, its policies; and

      (e)    On their Fifth Cause of Action, a judgment awarding money damages in an

amount to be determined; and

      (f)    On their Sixth Cause of Action, a judgment awarding money damages in an

amount to be determined; and

      (g)    Awarding the Umbrella and Excess Carriers their attorneys' fees, costs and other

expenses; and

12

(h)      Awarding the Umbrella and Excess Carriers such further relief as this Court

deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated:  New York, New York
        February 4, 2010

SIMPSON THACHER & BARTLETT LLP

By: _____
     Bryce L. Friedman (bfriedman@stblaw.com)
     Alexander B. Simkin (asimkin@stblaw.com)

425 Lexington Avenue
New York, N.Y. 10017-3954
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for AIU Insurance Company, American Home Assurance Company, Chartis Specialty Insurance Company (formerly known as American International Specialty Lines Insurance Company), Granite State Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa.*

13